UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:17-CV-00474-JHM

ROBERT MORGAN and  PLAINTIFFS
LEONARD ANDREW

v.

COMMONWEALTH OF KENTUCKY, et al.  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment by all named defendants: the Commonwealth of Kentucky, Secretary John Tilley, Commissioner James Erwin, Warden Aaron Smith, Julie Barber, Carton Jobe, Alvin Brown, Denny Acosta, Darrell Bratton, and an "Officer Jones." (DN 13.) Also before the Court is a motion for leave to file a surreply by plaintiffs Robert Morgan and Leonard Andrew. (DN 17.) Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

Plaintiffs Morgan and Andrew are inmates who were incarcerated at Kentucky State Reformatory ("KSR") in La Grange, Kentucky. (Pl.'s Amend. Compl. [DN 10] ¶¶ 2–3.) Both allege that, on separate occasions, they were assaulted and seriously injured by other inmates at KSR. (*Id.* ¶¶ 1, 30, 38.) Their amended complaint details the conditions of their confinement that they believe caused their injuries: that KSR was overpopulated and understaffed (*id.* ¶ 17), that prison staff members were aware of the frequency at which inmate-on-inmate violence was occurring and the risk it posed (*id.* ¶¶ 21, 34), that certain staff members were specifically told by Morgan that he feared for his safety (*id.* ¶¶ 15, 20, 25, 27), and that no staff members intervened during either assault to render aid to Morgan or Andrew. (*Id.* ¶¶ 31–33, 39.)

Morgan and Andrew assert five claims in their amended complaint. They make claims for violations of their Eighth Amendment rights under 42 U.S.C. § 1983 (Counts I–III), as well as state-law negligence claims (Count IV) while seeking injunctive relief as well (Count V). After the Court screened the complaint pursuant to 28 U.S.C. § 1915A (DN 9), the defendants moved for summary judgment on the grounds that both Morgan and Andrew had failed to exhaust their internal prison remedies. (DN 13.) Morgan and Andrew responded with evidence that they had filed grievances with KSR (DN 15), and the defendants replied. (DN 16.) Morgan and Andrew then sought leave to file a surreply (DN 17, 19-1), to which the defendants have responded. (DN 18.)

## II. MOTION FOR LEAVE TO FILE SURREPLY

Beginning with the plaintiffs' motion for leave to file a surreply, the Court will grant the motion. A brief summary of the parties' arguments best explains why. The defendants' original motion for summary judgment argues that Morgan and Andrew failed to exhaust their internal prison remedies, as there was no record of either individual having appealed any grievances to the commissioner of the Department of Corrections, the highest level of appeal an inmate can pursue. (Dunn Aff. [DN 13-3] ¶ 4.) In response, the plaintiffs note that they had in fact filed grievances; however, these grievances were rejected for pertaining to "non-grievable" issues. (Andrew Grievance [DN 15-1] at 1; Morgan Grievance [DN 15-2] at 1.) Because the prison's internal grievance procedures provide no method for appealing a determination that an issue is non-grievable, the plaintiffs argue that they have in fact exhausted their remedies. In reply, the defendants continue to argue that the plaintiffs have not exhausted their remedies. But now facing the grievances Morgan and Andrew filed related to the assaults, the defendants argue that these grievances were inadequate to exhaust the plaintiffs' remedies as to the claims asserted in

the present litigation. (DN 16.) The tendered surreply responds to these latest arguments regarding the adequacy of the grievances, which were not presented in the original motion for summary judgment and could not have been addressed in the plaintiffs' response. Therefore, the motion for leave to file a surreply (DN 17) is **GRANTED**.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient;

there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Finally, in a case such as this one where "the defendants in prisoner civil rights litigation [have] move[d] for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citations omitted).

## B. ANALYSIS

There is no general requirement that a plaintiff must exhaust any available administrative remedies before bringing a claim for constitutional violations pursuant to § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982). However, Congress created an exception to this rule for claims brought by prisoners when it passed the Prison Litigation Reform Act ("PLRA"). Under 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." While this edict that a prisoner must exhaust his remedies before filing suit appears simple, this case demonstrates the complexities lurking behind almost every word of § 1997e.

The statute requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). But an inmate need only exhaust those remedies that are actually "available;" if

4

an administrative remedy "is not capable of use to obtain relief," then § 1997e will not act as a barrier to suit. *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016).

Whether an inmate has exhausted his available remedies will largely depend on what is required by the prison's internal grievance procedure. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust'"). But generally, internal exhaustion requires an inmate to state their grievance with sufficient particularity so as "to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 591 (quotations omitted).

KSR has an internal grievance procedure. (*See* DN 13-2.) As relevant to this case, it defines a "grievable issue" as "any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue," and it specifically includes "[c]orrections policies and procedures," "[i]nstitutional policies and procedures," and "[p]ersonal action by staff." (*Id.* ¶ II.B.) It also includes a list of eleven non-grievable issues. (*Id.* ¶ II.C.) If an inmate wishes to file a grievance, he must do so in writing and include "all aspects of the issue and identify all individuals" so that the grievance may be adequately addressed by the prison. (*Id.* ¶ II.J.1.a.5.) A grievance may either be rejected or permitted to move on to the informal resolution stage. (*Id.* ¶ II.J.1.) While there is a multistep appeals process for grievances that move on to the informal resolution stage, there is no appeals process for grievances that are rejected. (*Id.*) Specifically, there is no procedure that allows for an appeal of a grievance that is rejected as "non-grievable."

Morgan and Andrew both filed grievances related to the events at issue in this case. (*See* DN 15-1, 15-2.) Morgan's grievance states that on September 11, 2016, at least three inmates

made two attempts to assault him throughout the day before finally succeeding on the third attempt. (DN 15-2, at 3.) He was stabbed at least four times and taken to the hospital with a collapsed lung, among other injuries. (*Id.*) He notes that the assault occurred while Officer Jones "was mak[ing] rounds upstairs and shak[ing] down, down stairs." (*Id.*) He then concludes with the following:

> If they had enough staff to run this prison and monitor camera activity then a lot of this stuff wouldn't happen. If staff was on [their] job this wouldn't have happened and therefore are accountable for my injuries. And it's a major security concern when an inmate can get his hands on a shank like was used on me. If something ain't done someone's going to get killed with the increase violence at K.S.R.

(*Id.* at 3–4.) The grievance was deemed non-grievable and rejected, as it "related to disciplinary proceedings." (*Id.* at 1.)

As for Andrew's grievance, it states the following:

> On Saturday 8/6/16 around 7-8 pm I was jumped and assaulted by 4 men. I was taken to the hospital the same night and returned on Sunday afternoon. I asked that the camera footage for that time be reviewed, because only one of the three was taken to SEG. As of the below date, I've heard nothing else.

(DN 15-1, at 2.) He also asks that the "camera footage be reviewed and appropriate action be taken." This grievance was rejected as non-grievable for being a grievance "against another inmate." (*Id.* at 1.)

The steps taken by both Morgan and Andrew were sufficient to exhaust their remedies as to the grievances filed. The grievance procedure provides no opportunity to appeal a rejection of a grievance for complaining of a non-grievable issue. Further, the form upon which the grievance was deemed non-grievable contains no space where the inmate can indicate that he wishes to appeal this decision, whereas the grievance forms attached at the end of the grievance

6

policy have areas where an inmate can indicate that he wishes to appeal the decision to the next stage. (*See* DN 13-2, at 22–23.) Despite the defendants' initial argument that no records exist of any appeals to the commissioner by the plaintiffs, the grievance procedure clearly does not permit such an appeal. Therefore, Morgan and Andrew exhausted all available remedies as to these grievances. *See Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (when grievance regarding classification was non-grievable through normal grievance procedure, plaintiff had exhausted remedies that were available through that procedure); *Rancher v. Franklin Cty.*, 122 F. App'x 240, 242 (6th Cir. 2005) (no exhaustion of medical grievance required when jail had de facto policy of treating medical grievances as non-grievable).

However, it is not enough that the plaintiffs have exhausted any remedies that are available for that grievance. The factual content grieved must be fairly congruent with the claims being pursued in Court for the inmate's remedies for that claim to be "properly exhausted." *Woodford*, 548 U.S. at 93–94. Because a grievance must "allow prison officials a fair opportunity to address" the conduct complained of in the lawsuit "on the merits," a grievance that is unrelated to the legal claims asserted by the prisoner would obviously not provide prison officials with that opportunity. *Mattox*, 851 F.3d at 591 (quotations omitted). Thus, the Court must determine whether Morgan and Andrew grievances adequately relate to the claims they now bring.

Morgan's grievance complained of an assault that he believes was caused by inadequate staffing.[1] Likewise, the complaint alleges, at least in part, that KSR is dangerously understaffed

---

[1] Morgan also wrote a letter to the governor and commissioner of the Department of Corrections that informed them of the dangerous conditions inside KSR due to understaffing. (DN 19-2.) The amended complaint alleges that defendants Erwin and Smith received this letter. (Pl.'s Amend. Compl. [DN 10] ¶ 16.) While this letter may be relevant to showing deliberate indifference on the part of these defendants, the plaintiffs have not argued that this letter was the proper way to exhaust their remedies against any defendants or that the internal prison grievance system was not available to raise grievances against state officials outside of the prison. Therefore, the Court will

and that this understaffing led to inmate-on-inmate assaults like the one suffered by Morgan. Andrew's grievance also complains of an assault, although his concerns about prison staffing are less obvious than Morgan's. The defendants argue that the grievances are inadequate to exhaust the plaintiffs' present claims because, with the exception of Officer Jones in Morgan's grievance, none of the defendants are named in either grievance. The KSR internal grievance procedure does require an inmate to "identify all individuals." (DN 13-2 ¶ II.J.1.a.5.) The policy does not elaborate as to whether this means all individuals against whom the inmate wishes to grieve, all individuals present at the scene of the incident, or some other definition of "all individuals;" it simply requires this information "so that all problems concerning the issue or individuals may be dealt with during Step 1" of the grievance process. (*Id.*) Regardless, the defendants argue that the plaintiffs cannot be considered to have exhausted their remedies against any defendant who was not named in a grievance.

The PRLA itself does not require that a grievance include the name of all individuals that a prisoner seeks to assert claims against in court. *Jones*, 549 U.S. at 217–19. However, a plaintiff must "[c]ompl[y] with prison grievance procedures" to exhaust his or her remedies. *Id.* at 218. When prison grievance procedures require that an inmate name all individuals in a grievance, the Sixth Circuit has enforced the requirement and found inadequate exhaustion when a grievance does not include the name of a defendant. *Mattox*, 851 F.3d at 590–91. Thus, the Court must enforce KSR's requirement that a grievance "identify all individuals."

Morgan's grievance identifies only one individual: Officer Jones. The grievance does also include general concerns about staffing and complains that "they," likely meaning high-ranking prison officials, have failed to adequately staff the prison. Morgan argues that these

---

only consider the plaintiffs' use of the internal prison grievance system to determine if they exhausted their remedies.

generalized statements about the failure of KSR officials to adequately staff the prison put those individuals on notice that he was complaining about their failures and that such statements are sufficient to exhaust his remedies. However, Morgan cites to no cases supporting this argument, and the Court cannot find any support for the premise that proper exhaustion is not required for grievances that complain of wider institutional problems rather than concerns with individual prison staff members. In fact, the Supreme Court's opinion in *Porter* requiring exhaustion for "all inmate suits about prison life, whether they involve general circumstances or particular episodes" seems to preclude Morgan's argument in favor of such an exception. *Porter*, 534 U.S. at 532. Thus, he cannot claim that he adequately identified all of the defendants in his grievance. Likewise, because Andrew's grievance identifies none of the defendants, his grievance is inadequate under the KSR grievance policy.

However, there is one exception to this rule. When a prison grievance system requires an inmate to identify all individuals but then ignores that requirement and evaluates the grievance, prison officials cannot then complain that the inmate failed to exhaust his or her remedies by failing to comply with the requirements of the grievance system. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). In deciding that prison officials could not claim an inmate failed to follow its procedures when the prison failed to enforce them, the Court of Appeals said the following:

> The point of the PLRA exhaustion requirement is to allow prison officials a fair opportunity to address grievances on the merits . . . Requiring inmates to exhaust prison remedies in the manner the State provides – by, say, identifying *all* relevant defendants . . . furthers these objectives . . .
>
> Yet the equation changes when the State does not enforce its own rules. When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we. In that setting,

> the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar?

*Id.* at 324–25 (quotations omitted) (emphasis in original).

The facts underlying this case are not identical to those in *Reed-Bey*. For example, Reed-Bey failed to identify any individuals in his initial grievance, whereas Morgan did identify one. And perhaps most importantly, the prison in *Reed-Bey* evaluated the grievance on the merits three times and rejected it each time; here, both grievances were immediately rejected as complaining of non-grievable issues.

Based on the KSR grievance policy, the determination that a grievance complains of a non-grievable issue does not appear to be a merits-based decision; instead, it appears to act as more of a procedural bar to bringing certain types of grievances. (*See* DN 13-2 ¶ II.B–C.) However, the plaintiffs argue that the rejection of their grievances as non-grievable acted as merits-based review, or at least its equivalent, since it precluded further appeal and essentially denied them the chance to ever have the merits of their grievances decided. This argument is not without some merit given how the KSR grievance system disposed of the grievances in this case, as KSR rejected the grievances as non-grievable when it appears they actually *were* grievable. Morgan's grievance was rejected for being related to a disciplinary procedure, which is included in the grievance system's list of non-grievable issue. (*See* DN 13-2 ¶ II.C.4.) But Morgan's grievance does not appear to be an appeal of a disciplinary procedure or decision; he is not complaining of discipline given to him, nor is he complaining of a lack of discipline given to the perpetrators of his assault. He is complaining of being assaulted and the understaffing that he believed allowed it to happen, making the prison's classification of the grievance as non-

grievable seemingly incorrect. Similarly, Andrew's grievance was rejected as non-grievable, as it was a grievance "against another inmate." However, under the KSR grievance policy, this is not even a reason that a grievance can be considered non-grievable. (*Id.* ¶ II.C.) Therefore, it certainly should not have been rejected as non-grievable, since "[a] grievable issue shall include any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue." (*Id.* ¶ II.B.)

The Court is troubled by KSR's inability to apply its own internal grievance procedures correctly, especially when the PLRA so strongly defers to those procedures on the issue of exhaustion. *See Jones*, 549 U.S. at 218. But the Court is still left with the issue of whether the *Reed-Bey* exception is applicable to the present facts. Does KSR's rejection of the grievances as non-grievable preclude the Court from relying on *Reed-Bey*, since the grievances never received merits-based review? Or should the Court apply the *Reed-Bey* exception, as the plaintiffs tried to receive merits-based review of their grievances and were incorrectly denied that opportunity?

After careful consideration, the Court cannot apply the *Reed-Bey* exception to this case. Since *Reed-Bey*, the Sixth Circuit and district courts within the circuit have interpreted *Reed-Bey* strictly so as to apply only when an inmate has received merits-based consideration of his or her grievance at every available juncture. *See Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) (refusing to apply *Reed-Bey* exception when plaintiff "did not receive merits-bases responses . . . at any step in the grievance process"); *Swank v. Hale*, 2016 WL 1156517, at *7 (S.D. Ohio Mar. 24, 2016) ("Here, Swank did not receive a merits-based response as to each allegation at every stage of the grievance process, as required"). *See also Lee v. Willey*, 789 F.3d 673, 680–81 (6th Cir. 2015) (distinguishing *Reed-Bey* since plaintiff in present case did not receive merits based response at each step). Here, neither Morgan nor Andrew received what

11

can be considered "merits-based consideration" of their grievances at the only stage that was permitted to them, as no individual or administrative body ever reviewed the allegations in the grievance to determine if they actually happened or if they merited relief. *See Cook*, 531 F. App'x at 563 ("if the prison had examined the merits [of an inmate's grievance related to improper bunk placement], its response would have discussed his actual bunk placement, and whether or not the prison had violated its own policy in assigning him to a top bunk"). Instead, they were rejected for complaining of issues that the KSR grievance policy does not permit and deemed non-grievable. KSR's decision that these issues were non-grievable appears to be incorrect, but there is no exception to the exhaustion requirement based on prison authorities having negligently handled an inmate's grievance. KSR's grievance policy requires that an inmate name all individuals in a grievance, and the plaintiffs failed to do that in this case. Thus, because the grievances fail to adhere to the KSR grievance policy, Morgan and Andrew have not properly exhausted their remedies.

The only exception is Officer Jones. Morgan's grievance names Jones as being near the scene when he was assaulted. By naming Jones, Morgan complied with the KSR grievance policy and exhausted all available remedies when that grievance was rejected. The defendants, however, argue that Morgan's grievance is inadequate even as to Jones. They argue that since the grievance states that Jones was upstairs when Morgan was assaulted but the complaint states he was aware of the assault and failed to respond, Morgan has contradicted himself and shown that Jones cannot be liable for any constitutional violations. But there is insufficient proof at this point as to whether those two statements actually contradict each other. Jones could have been upstairs making rounds with full awareness of what was happening to Morgan downstairs. Thus, the defendants cannot at this point show that there is no genuine dispute as to the material facts

regarding Jones' knowledge and actions. As such, summary judgment is inappropriate at this stage.

### C. NEGLIGENCE CLAIMS

A significant caveat to the PLRA's exhaustion requirement is that it only requires exhaustion of claims made pursuant to § 1983 or other federal laws. 42 U.S.C. § 1997e. Morgan and Andrew also assert a state-law negligence claim against all defendants. (Pl.'s Amend. Compl. [DN 10] ¶¶ 56–60.) The defendants make no argument as to why dismissal of these claims is appropriate. Thus, the Court will not dismiss these claims.

### D. SUMMARY

Therefore, the Court will order the following:

(1) Count I (§ 1983 claim against all defendants): the motion for summary judgment for failure to exhaust available remedies is **GRANTED** as to all defendants except Officer Jones. The motion for summary judgment is **DENIED** as to Officer Jones.

(2) Count II (§ 1983 claim against all defendants): the motion for summary judgment for failure to exhaust available remedies is **GRANTED** as to all defendants except Officer Jones. The motion for summary judgment is **DENIED** as to Officer Jones.

(3) Count III (§ 1983 claim against Tilley, Erwin, Smith, and Brown): the motion for summary judgment for failure to exhaust available remedies is **GRANTED**.

(4) Count IV (negligence as to all defendants): the motion for summary judgment is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the defendant's motion for summary judgment (DN 13) is **GRANTED IN PART** and **DENIED IN PART**. **IT IS**

**FURTHER ORDERED** that the plaintiffs' motion for leave to file a surreply (DN 17) is **GRANTED.**

cc: counsel of record