UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| ROBERT MORGAN, et al., | ) |
| Plaintiffs, | ) Civil Action No. 3:17-CV-474-CHB |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| COMMONWEALTH OF KENTUCKY, et al., | ) **ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants Aaron Jones and Denny Acosta's Second Motion for Summary Judgment [R. 105], Defendant James Erwin's Second Motion for Summary Judgment [R. 107], and Defendant Aaron Smith's Second Motion for Summary Judgment [R. 120]. Plaintiffs Leonard Andrew and Robert Morgan responded in opposition to these Motions. [R. 106; R. 113; R. 123] Defendants replied to these Responses, and the matters are now before the Court. [R. 108; R. 114; R. 126] For the reasons described below, the Court will grant Defendant Erwin's Motion and Defendant Smith's Motion. The Court will grant Defendants Jones and Acosta's Motion as to the remaining federal claims and will dismiss the remaining state-law negligence claim without prejudice for lack of subject-matter jurisdiction.

**I.    Factual Background**

The Court has recounted in detail the facts of this matter, in the light most favorable to Plaintiffs, in its previous Memorandum Opinion and Order. [R. 104] Both Plaintiffs Morgan and Andrew, who were inmates at the Kentucky State Reformatory ("KSR"), were assaulted by other inmates in August and September 2016. [R. 10, pp. 6–7] KSR, which was managed by the Kentucky Department of Corrections ("KDOC"), was operating with significantly fewer staff

than normal at the time—between 25–50% of corrections-officer positions were vacant. [R. 81-5, pp. 21–22] Corrections officers worked 12- and sometimes 16-hour shifts to make sure KSR was fully staffed. [R. 81-3, pp. 13–14; R. 81-2, pp. 35–36; R. 81-5, pp. 25, 61–62] KSR was also operating in a state of flux. KSR's warden, Defendant Smith, issued a memorandum to inmates in July 2016, which advised that many of the dorms would be closed and about half the inmate population would be transferred to another institution. [R. 81-10] This memo led to an increase in inmate-on-inmate violence and a rush to collect outstanding debts among inmates. [R. 81-2, p. 45–46]

In mid-2016, Plaintiff Morgan wrote multiple letters to state officials to warn of increased violence at KSR. In May 2016, Morgan wrote to Governor Matt Bevin and Department of Corrections Commissioner Rodney Ballard. [R. 81-8] The letter noted KSR staff were not monitoring the security cameras and several inmates had been hospitalized because of beatings. *Id.* at 4, 7–8. On May 26, Deputy Commissioner James Erwin responded, telling Morgan that he had investigated the claim and did not "find any merit" to it. [R. 81-9] Erwin claims he contacted Smith regarding this letter, although Smith claims that he does not recall any conversations with Erwin regarding Morgan. [R. 81-2, p. 58; R. 81-5, pp. 77–80] On August 11, 2016, Morgan wrote to Erwin to warn of continuing violence at the prison. [R. 81-15] And on September 9, 2016, Morgan met with Smith and told Smith that he was in danger because of the violence. [R. 81-16; R. 81-2, p. 53]

Plaintiff Andrew was assaulted by inmate Dustin McKinney on August 6, 2016, suffering severe facial injuries and eye swelling, which required surgery. [R. 72-5] He had no known conflicts with McKinney prior to the assault. [R. 72-6; R. 81-11, pp. 5–6] On August 11, 2016, Andrew filed an administrative grievance, which asked for KSR to discipline his attackers. [R.

15-1] It was correctly deemed to be non-grievable because it clearly sought disciplinary action against other inmates, a non-grievable issue, and failed to allege any complaint against staff for failure to protect. [*Id.*; R. 104, pp. 17–19]

On September 11, 2016, Morgan was attacked three times by a group of three or more inmates. [R. 74-2, p. 27–28; R. 72-8] Morgan had recently vouched for another inmate, Timothy Biggs, who owed debts to other inmates. [R. 74-2, pp. 48–49] At 2 p.m. that day, three or more inmates tried to stab him with a homemade shank. *Id.* Then around 3 p.m., three or more inmates attacked Morgan again, kicking and stomping him. [*Id.* at 27–28; R. 81-17] Morgan did not tell any prison guards about these two assaults before the final assault that day. [R. 74-2, p. 50] Finally, around 4 p.m., inmates Isidro Perez and the previously mentioned McKinney chased Morgan into his cell dorm. [R. 72-8, at 3:50:00–3:50:50] Ten minutes later, when Morgan came out of his dorm holding a table leg for protection, McKinney, Perez, and a third inmate grabbed a walker and proceeded to beat Morgan with it. *Id.* at 4:00:54. Corrections Officers Denny Acosta and Aaron Jones eventually broke up the assault. *Id.* at 4:00:54–4:01:51. Morgan suffered a concussion, collapsed lung, facial and hand fractures, and he had multiple stab wounds. [R. 74-2, pp. 25–26; R. 81-19; R. 72-12] He filed an administrative grievance concerning the attack, but it was incorrectly deemed non-grievable. [R. 81-17; R. 81-21, pp. 17–20; R. 72-1, p. 14; R. 104, p. 24]

## II. Procedural History

Plaintiffs Andrew and Morgan filed this case on August 7, 2017, [R. 1], and submitted their Amended Complaint on September 6, 2017. [R. 10] The Amended Complaint purports to contain five counts. Counts 1 and 2 are claims under 42 U.S.C. § 1983 for violations under the Eighth Amendment under a failure-to-protect theory. [R. 10, ¶¶ 42–51] Count 3 is also an Eighth

Amendment claim against Defendants Tilley (Secretary of the Kentucky Justice & Public Safety Cabinet), Erwin, and Smith in their supervisory capacity. *Id.*, ¶¶ 52–55. Count 4 is a negligence claim under state law, *id.*, ¶¶ 56–60, and Count 5 sought injunctive relief, *id.*, ¶¶ 61–66.

Defendants Tilley, Erwin, Smith, Acosta, and Jones, who comprised all remaining Defendants, first filed Motions for Summary Judgment on the issues considered here on December 2, 2019. [R. 72; R. 74] After briefing and review, the Court entered a Memorandum Opinion and Order on those Motions on November 24, 2020. [R. 104] In that Memorandum Opinion and Order, the Court granted the Defendants' Motions for Summary Judgment in part and dismissed several claims, but it let stand Plaintiff Morgan's § 1983 deliberate indifference claims (Count 1) against Defendants Smith, Erwin, Acosta, and Jones; Plaintiff Morgan's supervisory liability claims (Count 3) against Defendant Erwin; and Plaintiffs Andrew and Morgan's state-law negligence claim against Defendant Jones. [R. 104, p. 28] On those claims it let stand, the Court denied Defendants' Motions for Summary Judgment and ordered re-briefing on the specific issue of whether Plaintiff Morgan's claims under deliberate indifference and supervisory liability were barred by the qualified-immunity standard discussed in *Beck v. Hamblen County*, 969 F.3d 592 (6th Cir. 2020). [R. 104, p. 28] The Court also ordered Defendant Jones to clarify whether he opposed the state-law negligence claims against him. *Id.*

All remaining Defendants have now filed renewed Motions for Summary Judgment, which have discussed this matter's relationship to the *Beck* qualified-immunity standard. [R. 105; R. 107; R. 120] Defendant Jones has also confirmed his opposition to the state-law negligence claims and moved for summary judgment on those claims. [R. 105-1, pp. 8–10, 17]

**III.     Standard of Review**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). When, as here, the defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.  The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

IV.     Discussion

    A.     **Claims Against Erwin and Smith**

Defendants Erwin and Smith are entitled to summary judgment on all remaining claims against them. Assuming, without deciding, that they violated Morgan's constitutional rights, they are nevertheless shielded by qualified immunity. To defeat qualified immunity, Plaintiffs must identify a case that clearly establishes that Erwin or Smith's conduct violated Morgan's constitutional rights, but they have not done so. *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 993 (6th Cir. 2017).

The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant is entitled to qualified immunity on summary judgment unless a reasonable juror, when viewing the facts in the light most favorable to the plaintiff, could find that: (1) the defendant violated a constitutional right; and (2) that right was clearly established. *Bishop*, 636 F.3d at 765 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 649 (1987). This requires a plaintiff to "identify with 'a high degree of specificity' the legal rule that a government official allegedly violated." *Beck*, 969 F.3d at 599 (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). In using case law to establish a legal rule, "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey*, 858 F.3d at 993 (quoting *White v. Pauly*, 137 S. Ct. 548,

552 (2017)). Still, "a case need not be 'on all fours' with the plaintiff's case." *Beck*, 969 F.3d at 599 (quoting *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019)).

Looking at Eighth Amendment rights specifically, it is true that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). And an inmate's right to be free from prison violence is clearly established. *Bishop*, 636 F.3d at 766. But, as the Sixth Circuit recently clarified in *Beck*, the inquiry does not end there: "[T]he general right to be free from inmate violence will often not clearly establish whether an official reasonably responded to the risk of violence on a given occasion." *Beck*, 969 F.3d at 602–03. Rather, "precedent 'must point [unmistakably] to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.'" *Id.* at 603 (alteration in original) (quoting *Perez v. Oakland County*, 466 F.3d 416, 427 (6th Cir. 2006)).

Here, Plaintiffs have not identified any precedent "with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey*, 858 F.3d at 993 (quoting *Pauly*, 137 S. Ct. at 552). Plaintiffs cite to four relevant cases. First, Plaintiffs analogize Erwin's action to that of the prison officials in *Madden v. Grate*, No. 5:19-CV-73-TBR-LLK, 2020 WL 95138 (W.D. Ky. Jan. 8, 2020), which denied qualified immunity for a prison official after an inmate wrote that he was at risk of assault by gang members, and the official did not adequately investigate the risk. [R. 113, pp. 6–7; R. 123, pp. 6–7] Second, they cite to *Richko v. Wayne County*, 819 F.3d 907 (6th Cir. 2016) for the proposition that prison officials "must do something" when notified of risks of danger. [R. 113, pp. 7–8; *accord* R. 123, pp. 7–8] Third, they cite to *Farmer* for the proposition that "a failure-to-protect plaintiff need not

- 7 -

show a 'specific risk to a specific inmate to defeat a claim of qualified immunity.'" [R. 123, p. 6 (quoting *Hensley v. Bossio*, 17-7-HRW, 2018 U.S. Dist. LEXIS 38665, *3 (E.D. Ky. Mar. 9, 2018))] Fourth, they cite to *Taylor v. Michigan Department of Corrections*, 69 F.3d 76 (6th Cir. 1995) for the proposition that a supervisor cannot delegate his duty to investigate risks to inmates' health. [R. 113, pp. 8–9] But all four cases are distinguishable.

*Madden* did not clearly establish any right because it is a district court case, and district court cases cannot clearly establish precedent. *See Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Further, *Madden* was decided over three years *after* the attacks took place in this case. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.").

*Richko* is factually inapposite. In *Richko*, jail staffers were on notice that a specific detainee, who suffered from schizophrenia and bipolar disorder and who had a history of mental-health episodes, posed a threat to other detainees housed in a cell with him. 819 F.3d at 912–14. Nevertheless, jail officials housed another inmate with him in the same cell, and he fatally stabbed that other inmate. *Id.* at 912–13. The Sixth Circuit found that the officials' conduct was deliberately indifferent because the cellmate had an objectively serious risk of harm in being housed with a detainee with such a history of violent mental-health episodes, and a reasonable jury could find that the officials knew of that risk. *Id.* at 916–18. Here, neither Erwin nor Smith knew of a specific risk of harm *to Morgan*; instead, they simply knew Morgan feared the general prevalence of violence in KSR. *See* [R. 81-8; R. 81-15; R. 74-2, pp. 17–21; R. 81-2, p. 53][1]

---

[1] It is clear that the letters Morgan sent to KDOC did not warn of any specific threat to him. [R. 81-8; R. 81-15] It is less clear what Morgan talked to Smith about in their September 9, 2016 meeting. However, the record shows this meeting occurred *before* the event that put Morgan in immediate danger—Morgan's fellow inmate and friend Biggs putting Morgan on the hook for his debt. Morgan's meeting with Smith

*Richko*, where jail officials knew of specific risks of harm for a detainee, does not contain a "similar fact pattern" to put either Erwin or Smith on notice of a duty to take action on Morgan's letter that warned of general violence. *See Beck*, 969 F.3d at 601.

*Farmer* is inapposite for similar reasons as *Richko*. *Farmer* concerned a transgender woman who was incarcerated at a men's penitentiary. 511 U.S. at 829–30. She was beaten and raped by her cellmate when prison officials had her share a prison cell. *Id.* The Supreme Court remanded the case, holding that, if the inmate was especially at risk of violence because of her transgender identity and the officials knew she belonged to a class of individuals at risk of harm, she could show deliberate indifference. *Id.* at 843, 848–49. *Farmer* confronts a markedly different fact pattern than Morgan, who has never alleged that he was a member of a particularly vulnerable class of persons. Instead, Morgan notified Erwin and Smith only of the general risk of violence in the prison. [*See* R. 81-8; R. 81-15; R. 72-10, p. 49; R. 81-2, p. 53]

*Taylor*, though relevant to the issue of supervisory liability, ultimately cannot meet the high standard of having enough of a similar fact pattern to "give[] 'fair and clear warning to officers' about what the law requires." *Arrington-Bey*, 858 F.3d at 993 (quoting *Pauly*, 137 S. Ct. at 552). In *Taylor*, prison officials transferred a diminutive inmate with mental disabilities to a barracks-style prison where the inmate shared a room with 60 other inmates. 69 F.3d at 77–78. He was raped by another inmate shortly after his transfer. *Id.* at 78. Evidence showed that the prison warden delegated his responsibility to approve transfers to subordinates and did not adequately review the inmates' records prior to approving his subordinates' work. *Id.* at 81. The Sixth Circuit affirmed the denial of summary judgment to the prison warden for supervisory liability, holding that a reasonable jury could find that the warden "abandon[ed] the specific

---

occurred on September 9, 2016; Morgan learned of the debt on September 11, 2016. [R. 72-10, p. 49; R. 81-2, p. 53]

duties of his position" (namely, adopting and implementing transfer procedures) "in the face of actual knowledge of a breakdown in the proper workings of the department." *Id.* (quoting *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992)). This conduct "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (emphasis removed) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). *Taylor* shows that a prison official may not escape Eighth Amendment liability by delegating his responsibilities to subordinates without reviewing those subordinates' work.

Erwin's conduct—purportedly failing to pass along Morgan's letter to Smith for investigation—differs from the warden's conduct in *Taylor* in several respects. First, Erwin was never warned of a specific threat to Morgan himself; instead, both letters contained general allegations of violence at KSR. [R. 81-8, pp. 4, 7–8; R. 81-15] Second, Erwin responded to Morgan. He responded to the first letter by writing to Morgan and advising he had "contacted staff at KSR and was not able to find any merit to [Morgan's] claims."[2] [R. 81-9] The second letter alleged no specific threat to Morgan and contained the same allegations that Erwin had already looked into in response to the first letter. [R. 81-15] Third, there is no evidence in the record that Erwin *knew* KSR officials were not adequately performing their duties or following up on his requests. [*See* R. 81-5, pp. 73–76] In any event, there is simply no evidence Erwin, unlike the warden in *Taylor*, abandoned his duties "in the face of *actual knowledge* of a breakdown in the proper workings of the department." 69 F.3d at 81 (emphasis added) (quoting *Hill*, 962 F.2d at 1213).

---

[2] Smith states that he does not recall Erwin contacting him about Morgan's first letter. [R. 81-2, p. 58] Even assuming Erwin failed to follow up with Smith altogether regarding Morgan's letter, Erwin's conduct still differs from that of the warden in *Taylor*. In *Taylor*, the warden made a practice of failing review inmate transfers generally, whereas here, Smith's recollection only suggests that Erwin possibly failed to investigate an inmate letter in a single instance. [R. 81-5, pp. 73–76; R. 81-2, p. 58]

For the reasons noted above, Morgan has failed to meet his burden under *Beck* to identify prior, controlling precedent with a similar fact pattern. Nor has the Court found any cases with similar fact patterns that would have given a "fair and clear warning" to Erwin and Smith that the law required them to ameliorate the risks to Morgan's safety from the allegation of general prevalence of violence in the prison. Accordingly, the Court will grant Defendants Erwin and Smith's Second Motions for Summary Judgment on the remaining claims against them.

### B. Federal Claims Against Jones and Acosta

Defendants Jones and Acosta are also entitled to summary judgment on all federal claims against them. Assuming, without deciding, that they violated Morgan's constitutional rights, they are also shielded by qualified immunity. Here, too, Plaintiffs have not identified any cases that clearly establish that Jones or Acosta's conduct violated Morgan's constitutional rights.

Plaintiffs cite only to *Richko*, analogizing Jones and Acosta's behavior to that of the jail staffers in that case, as the Sixth Circuit denied summary judgment to staffers who may have heard an attack taking place but delayed in going to stop the attack. [R. 106, pp. 4–5] Though the discussion in *Richko* is relevant to the analysis of a prison officer's duties in responding to violence, it cannot meet the demanding standard necessary to defeat qualified immunity, which must "leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Perez*, 466 F.3d at 427. *Richko* concerned a detainee's fatal attack on his cellmate, described in the previous section. 819 F.3d at 912–13. The plaintiff put forth evidence showing that the deputy sheriff at that jail waited ten minutes after a nurse notified him of the attack to investigate the situation, and that he might have heard the attack when it took place—25 minutes before he responded. *Id.* at 912, 919. The Sixth Circuit denied the deputy sheriff's motion for summary judgment, finding that the plaintiff "proffered enough evidence for a reasonable juror to conclude

that [the deputy sheriff] *did* have knowledge of the risk to [the decedent] and that he deliberately disregarded that risk" by waiting so long to respond after he was notified and/or heard the attack taking place. *Id.* at 919.

*Richko* informs us that prison officers must respond promptly when notified of a violent situation, but its fact pattern contains key differences from the facts here. First, whereas the deputy sheriff in *Richko* responded 10 minutes after he was notified of the attack—and possibly up to 25 minutes after he heard the attack—both Jones and Acosta intervened within a minute of the attack starting. [R. 72-8, at 4:00:54–4:01:51] Although the Supreme Court has advised that differences in length of time do not automatically render a case inapposite for qualified-immunity purposes, *Taylor v. Riojas*, 141 S. Ct. 52, 54 n.2 (2020), a response time of 1 minute compared to 10 or 25 minutes is an important distinction. Second, the deputy sheriff in *Richko* failed to take *any* action to respond to the attack until 10–25 minutes later. Acosta responded immediately, and though he did not immediately intervene, he did take the immediate action of calling for backup and medical assistance. [R. 81-3, p. 40; R. 81-18, p. 5; R. 72-8] Jones, meanwhile, directed Acosta to investigate the fight as soon as he heard the disruption. [R. 81-18, p. 5; R. 81-3, p. 36] At most, *Richko* gave Jones and Acosta "fair and clear warning" that they needed to respond to the attack on Morgan promptly upon finding out about it, which they did. *Pauly*, 137 S. Ct. at 552.

*Richko* did not warn Acosta that he needed to intervene to break up the attack without backup, nor did it warn Jones that he needed to go to investigate the attack himself, rather than send Acosta to do so. Therefore, it cannot clearly establish that Jones and Acosta's conduct was unconstitutional. Similarly, the Court is not aware of any other cases that clearly establish the

unconstitutionality of Defendants' conduct. Accordingly, the Court will grant Defendants Jones and Acosta's Second Motion for Summary Judgment on the federal claims against them.

### C. Kentucky Law Claims Against Jones

Because the Court will grant summary judgment to Defendants on all remaining federal claims, the only remaining claim is Plaintiffs' state-law claim against Jones, for which the Court has exercised supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367. "The district courts may decline to exercise supplemental jurisdiction over a [supplemental jurisdiction claim] if the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3) (cleaned up). "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims. 'Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.'" *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citation omitted) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)); *see also Schwamberger v. Marion Cty. Bd. of Elections*, 988 F.3d 851, 859 (6th Cir. 2021). The interests of judicial economy are not strong enough here to merit the Court continuing to exercise jurisdiction over Plaintiffs' negligence claim under Kentucky law. Therefore, the Court will dismiss this claim without prejudice for lack of subject-matter jurisdiction. The Court advises that, if Plaintiffs file their negligence claim in the Kentucky courts, the statute of limitations has been tolled throughout the pendency of this litigation. § 1367(d).

### V. Conclusion

For the reasons discussed above, the Court will dismiss with prejudice all remaining federal claims against Defendants, who are entitled to qualified immunity. The Court will

dismiss without prejudice Plaintiffs' negligence claim against Jones for lack of subject-matter jurisdiction. Accordingly,

**IT IS HEREBY ORDERED** as follows:

1. Defendant James Erwin's Second Motion for Summary Judgment [**R. 107**] is **GRANTED**.

2. Defendant Aaron Smith's Second Motion for Summary Judgment [**R. 120**] is **GRANTED**.

3. Defendants Aaron Jones and Denny Acosta's Second Motion for Summary Judgment [**R. 105**] is **GRANTED IN PART AND DENIED IN PART**.

    a. Plaintiffs' remaining Eighth Amendment claims against all Defendants (Counts 1 and 3) are **DISMISSED with prejudice**.

    b. Plaintiffs' negligence claim against Defendant Aaron Jones (Count 4) is **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

This the 19th day of August, 2021.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record